UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTEN LAUES and
WILLIE M. GHOLSTON,

        Plaintiffs,

                                            Civil Case No. 14-10845
v.                                       Honorable Linda V. Parker

BANK OF AMERICA, N.A. and
BLANK ROME LLP,

        Defendants.

_____/

## **OPINION AND ORDER**

On February 24, 2014, Plaintiffs Kristen Laues ("Ms. Laues") and Willie M.

Gholston ("Ms. Gholston") (collectively "Plaintiffs") filed this action against

Defendants, challenging Defendants' actions in relation to a debt that Plaintiffs

contend is neither owed nor "validated." The matter initially was assigned to the

Honorable Lawrence P. Zatkoff, but was reassigned to the undersigned pursuant to

Administrative Order 14-AO-030 on May 28, 2014. The following motions currently

are pending before the Court:

> •Defendants' Joint Motion to Stay Discovery, filed April 8, 2014 (ECF
> No. 17);

> •Plaintiffs' Motion to Strike Motion for Extension of Time to File
> Answer, Order on Motion for Extension of Time to Answer, Statement
> of Disclosure of Corporate Affiliations, [and] Joint Motion to Stay
> Discovery (ECF No. 18);

•Defendant Bank of America, N.A.'s Motion to Dismiss (ECF No. 21);

•Defendant Blank Rome LLP's Motion to Dismiss (ECF No. 22);

•Plaintiffs' Motion for Summary Judgment (ECF No. 27);

•Plaintiffs' Joint Motion for Summary Judgment (ECF No. 28); and

•Plaintiffs' Motion for Sanctions (ECF No. 39).

The Court concludes that oral argument will not aid in its disposition of the pending motions and therefore is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(h).

As an initial matter, the Court finds Plaintiffs' motions to strike Defendants' various pleadings and for sanctions to be frivolous. The Court therefore is denying those motion and considering, where necessary, Defendants' motions responding to Plaintiffs' Complaint.

## I.    Factual and Procedural Background[1]

On December 31, 1998, Ms. Gholston secured a loan from PLG Funding Corporation ("PLG"). (ECF No. 21, Ex. A.) In connection with the loan, Ms. Gholston executed a promissory note in the amount of $43,400.00 and granted PLG a

---

[1]The facts are derived from those set forth in Plaintiffs' Complaint and those documents the Court may consider that are not part of the Complaint. This includes documents attached to the pleading and public records. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007). It also includes documents referred to in the Complaint which are central to Plaintiffs' claims. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

mortgage ("Mortgage") to property located at 8045 Sorrento, Detroit, Michigan, 48228 (the "Property").  (*Id.* Exs. A, B.)  The mortgage was recorded with the Wayne County Register of Deeds on January 12, 1999.  *See* https://www.waynecountylandrecords.com/recorder/eagleweb/viewDoc.jsp?node=DOCCL-14894361.

On January 7, 1999, PLG assigned the Mortgage to Washtenaw Mortgage Company.  (ECF No. 21, Ex. C.)  The assignment was recorded with the Wayne County Register of Deeds on January 12, 1999.  (*Id.*)  An assignment of the mortgage to NationsBanc Mortgage Corporation ("NationsBanc") on February 27, 1999, was recorded with the Wayne County Register of Deeds on January 20, 2000.  (*Id.*, Ex. D.)  Effective December 1, 1999, NationsBanc merged with and into BA Mortgage LLC, which merged into Defendant Bank of America ("BofA") effective April 15, 2003.  *see* www.ffiec.gov.   BofA has serviced the loan since that time, although Fannie Mae is the current investor.  (*Id.*, Ex. E.)

Ms. Gholston made payments due on the loan to BofA from the time it began servicing the loan until approximately early 2013.  In early 2013, however, the loan fell into default.  Plaintiffs allege that Ms. Gholston sent correspondence to BofA on or about February 5, February 27, and March 11, 2013, "disput[ing] the alleged debt and requir[ing] validation."  (Compl. ¶¶ 8-16.)

On June 10, 2013, without BofA's consent, Ms. Gholston added Ms. Laues to

3

the title of the Property.  (Compl. Att. 1 [Gholston Aff.] ¶ 13.)  Ms. Laues is not a

party to the Mortgage or the Note.

On June 24, 2013, Ms. Gholston sent another correspondence to BofA

"disput[ing] the alleged debt and requir[ing] validation."  (Compl. ¶¶ 17-20.)  BofA

responded to Ms. Gholston's communications on February 22, April 4, April 19, and

July 5, 2014.  (ECF No. 21, Ex. E.)  In those responses, BofA indicated that it was

treating certain requests by Ms. Gholston as "qualified written requests" ("QWRs")

under the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2605.

(*Id*.)  BofA also indicated that it would respond to valid QWRs, but not to requests for

non-qualifying information.  (*Id*.)  BofA also sent Ms. Gholston inter alia a copy of

the original Note (indicating that it could not send the original, as she requested,

because it documents her obligation to make payments and therefore needed to be

retained), a Loan Transaction History Statement, a Payoff Demand Statement, all

available loan documents, and contact information for the investor of the loan.  (*Id*.)

With respect to Ms. Gholston's statements "disavowing the enforceability of

the loan documents [Ms. Gholston] signed at closing," BofA responded that her letter

"does not contain any facts which would reasonably support any claim that the loan

documents signed at closing are not enforceable."  (*Id*.)  BofA stated, however, that if

Ms. Gholston provided it with correspondence "that describes in reasonable detail any

facts which support your claims regarding the enforceability of the loan documents

4

signed at closing, we will investigate your claims as soon as possible and provide you with a detailed written response." (*Id*.)

At some point in time, BofA hired Defendant Blank Rome LLP, a law firm, "for the sole purpose of responding to [Ms. Gholston's] correspondence." (*See* ECF No. 22, Ex. C.) Specifically, on September 19, 2013, Blank Rome sent a letter to Ms. Gholston responding to her June 24, 2013 correspondence. (*Id*.) Blank Rome treated the letter as a QWR. Blank Rome also sent Ms. Gholston additional copies of the Note and Mortgage, a payment history, identified fees that had been charged that were not reflected on the payment history, and identified the original lender, current owner, and servicer (including the address and toll-free number for the current owner and servicer). (*Id*.)

Ms. Gholston sent correspondence concerning the loan to the Consumer Financial Protection Bureau ("CFPB") which was forwarded to BofA for response on or about October 3, 2013. (*Id*., Ex. D.) Ms. Gholston's letter sought a response to her June 24, 2013 correspondence. (*Id*.) Blank Rome sent a letter to Ms. Gholston dated October 14, 2013, indicating that BofA had responded to that letter in the September 19, 2013 correspondence from Blank Rome. (*Id*.) Blank Rome attached a copy of that correspondence. (*Id*.)

Ms. Gholston then filed a complaint with the CFPB, asserting that her debt had not been "verified" and that BofA was engaging in "abusive collection activity on a

5

discharged debt from Washtenaw Mortgage."  (ECF No. 22, Ex. E.)  CFPB forwarded
Ms. Gholston's complaint to BofA on January 15, 2014.  (*See id.*, Ex. F.)  On behalf
of BofA, Blank Rome responded to Ms. Gholston's complaint in a January 27, 2014
letter.  (*Id.*)  Blank Rome's letter restated the information previously conveyed to Ms.
Gholston by Blank Rome and BofA.  (*Id.*)

Plaintiffs initiated this lawsuit against BofA and Blank Rome shortly thereafter,
on February 24, 2014, by filing a complaint titled: "Statement of Jurisdiction Verified
Complaint In The Nature of a Complaint For Redress of Injuries Under Authority Of
The Fair Debt Collections Practice Act ["FDCPA"], For Violations under 15 U.S.C.
1601 Et Seq. and the REAL ESTATE SETTLEMENT PROCEDURES ACT
(RESPA) 12 USC 2601 Et Seq[.]"  (ECF No. 1.)  In it, Plaintiffs assert thirty two
"cause[s] of action" against BofA and/or Blank Rome.

The first seven causes of action charge BofA with engaging in collection
activity "about January 9, 2006" without first advising Ms. Gholston of the following
information: (1-4) the name of the effective date of transfer of the servicing; (5) the
name and phone number for an individual employed by or a department of the
servicer to contact by a borrower with questions relating to the transfer of servicing;
(6) the date on which the previous servicer stopped accepting loan payments and
BofA began accepting payments; and (7) "a statement that the assignment, sale or
transfer of the servicing of the mortgage loan does not affect any term or condition of

6

the security instruments other than terms directly related to the servicing of such loan
. . . ."  (*Id*. at Pg ID 2-3.)  Plaintiffs cite 15 U.S.C. § 1692 and 12 U.S.C. § 2605 as
requiring BofA to provide the asserted information.

Plaintiffs' eighth through twentieth causes of action assert that Ms. Gholston
disputed the alleged debt and required validation, but BofA "continued with
collection activity without validation of the 'debt.'"  (ECF No. 1 at Pg ID 3-9.)
Plaintiffs assert that this conduct "does not comport with the requirements of The Act
[i.e. 15 U.S.C. § 1601 et seq. and 12 U.S.C. § 2601] as illustrated by [cited] common
law authorities."  (*Id*.)  The allegations in these thirteen claims are identical, except
with respect to the date on which Plaintiffs assert that Ms. Gholston disputed the
alleged debt and required validation and the subsections of the FDCPA and RESPA
cited.

In their twenty-first through twenty-ninth causes of action, Plaintiffs assert that
BofA "used false, deceptive[,] and misleading representation and means in connection
with the collection of an alleged debt of" Ms. Gholston in violation of the FDCPA.
(*Id*. at 9-11.)  In their thirtieth cause of action, Plaintiffs charge that BofA violated the
FDCPA when it "designed, compiled, and furnished a form knowing that such form
would be used to create the false belief that FNMA the alleged creditor of Willie M.
Gholston was participating in the collection of or in an attempt to collect a debt
allegedly owed when in fact FNMA was not so participating [in] such conduct".  (*Id*.

7

at 11.)  Plaintiff's thirty-first cause of action charges BofA and Blank Rome with violating the FDCPA by threatening to interfere with Plaintiffs' "business interests" and using "unfair means to threaten for[e]closure of an alleged debt . . . where no present right to possession existed as collateral through an enforceable security interest as required under Michigan law[.]"  (*Id.*)

In addition to the above allegations, in their twenty-second cause of action, Plaintiffs contend that they hold title to the Property free and clear because the residential mortgage loan was "false" and therefore "being serviced without merit or legal basis to do so."  (*Id.*)  They assert that BofA and Blank Rome violated the FDCPA "by misrepresenting the character and amount of an unverifiable debt allegedly owed."  (*Id.*)  They charge that BofA is a "debt collector" under the FDCPA because there was no actual mortgage loan and that BofA engaged in collection activity without first advising Ms. Gholston of her "due process rights expressly reserved at 15 USC 1692(g)(3) . . . ."  (*Id.* at 11-12.)

As indicated earlier, BofA and Blank Rome have filed motions to dismiss and Plaintiffs have filed motions for summary judgment.  BofA and Blank Rome also have moved to stay discovery pending the disposition of those motions.

## II.    Applicable Standards

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests whether a legally sufficient claim has been pleaded in a complaint, and provides for

8

dismissal when a plaintiff fails to state a claim upon which relief may be granted.

Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 555, 570 (2007)). A claim is facially plausible when a plaintiff

pleads factual content that permits a court to reasonably infer that the defendant is

liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). This

plausibility standard "does not impose a probability requirement at the pleading stage;

it simply calls for enough fact[s] to raise a reasonable expectation that discovery will

reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

When assessing whether a plaintiff has set forth a "plausible" claim, the district

court must accept all of the complaint's factual allegations as true. *Ziegler v. IBP

Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). Even so, "the pleading must

contain more . . . than . . . a statement of facts that merely creates a suspicion [of] a

legally cognizable right of action." *Twombly*, 550 U.S. at 555, 570. A plaintiff has

the duty to provide "more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do . . . ." *Id.* Therefore, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Compared to formal pleadings drafted by lawyers, a generally less stringent

9

standard is applied when construing the allegations pleaded in a pro se complaint.

*Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Even so, pro se plaintiffs must still

provide more than bare assertions of legal conclusions.  *Grinter v. Knight*, 532 F.3d

567, 577 (6th Cir. 2008) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d

434, 436 (6th Cir. 1988)).

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is

appropriate "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).

The central inquiry is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail

as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## III.   Applicable Law and Analysis

To summarize, in their Complaint, Plaintiffs assert violations of federal law,

specifically the FDCPA and RESPA, and common law claims of fraud and intentional

infliction of emotional distress.

### A.   RESPA

#### 1.   Plaintiffs' First through Seventh Causes of Action

Plaintiffs' first seven causes of action relate to activity in or around January 9,

2006, and charge BofA with violating RESPA, 12 U.S.C. § 2605.[2]  A three-year

statute of limitations period applies to claims brought pursuant to this section,

however.  *See* 12 U.S.C. § 2614 ("Any action pursuant to the provisions of section

2605, 2607, or 2608 of this title may be brought in the United States district court . . .

within 3 years in the case of a violation of section 2605 of this title and 1 year in the

case of a violation of section 2607 or 2608 of this title from the date of the occurrence

of the violation . . ..")  As such, Plaintiffs' RESPA claims arising from activity in

2006 are time-barred and must be dismissed with prejudice.

### 2.      Plaintiffs' Eighth through Twentieth Cases of Action

Plaintiffs allege that on various dates in 2013, "[Ms.] Gholston disputed the

alleged debt and required validation" but BofA "continued with collection activity

without validation of the 'debt.'" Plaintiffs charge that BofA's "putative 'validation'

of the 'debt'" did not comply with RESPA, specifically various subsections of 12

U.S.C. § 2605.[3]  Plaintiffs, however, have not alleged in their

---

[2]In these causes of action, Plaintiffs also charge BofA with violating the
FDCPA, 15 U.S.C. § 1692.  Plaintiffs' allegations concerning the FDCPA are
discussed later in this opinion and order.

[3]Plaintiffs assert violations of sections "2605(2)(A)", "2605(2)(B)(i)(ii)",
"2605(2)(C)(i)(ii)", and  "2605(4)."  Based on the allegations in their Complaint,
however, the Court assumes Plaintiffs intended to cite subsection (2) and (4) of
§ 2605(e), which sets forth the duties of a loan servicer to respond to a lender's
inquiries.  These provisions state:

(continued...)

[3](...continued)

(2) Action with respect to inquiry

Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall–

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–

> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–

> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

***

(4) Limited extension of response time

(continued...)

12

Complaint or in any other pleading how BofA's responses to Ms. Gholston's inquiries were deficient or how Plaintiffs were damaged as a result of the alleged deficiencies.

A plaintiff must plead actual damages as well as a causal link between the alleged RESPA violation and the plaintiff's injuries to recover for a violation of § 2605. *See Mekani v. Homecoming Fin., LLC*, 752 F. Supp. 2d 785, 795-96 (E.D. Mich. 2010) (noting that the plaintiffs must establish causation between the alleged RESPA violation and the damages claimed); *see also Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 510-11 (8th Cir. 2012) (holding that RESPA limits an individual to actual damages caused by violation of statute); *Ford v. New Century Mortg. Corp.*, 797 F. Supp. 2d 862, 870 (S.D. Ohio 2011).  Conclusory allegations of actual damages are not sufficient. *Amaral v. Wachovia Mortg. Corp.*, 692 F. Supp. 2d 1226, 1232 (E.D. Cal. 2010).  In any event, the record reflects that BofA and Blank Rome, on behalf of BofA, timely and adequately responded to Ms. Gholston's communications.

_____

[3](...continued)
The 30-day period described in paragraph (2) may be extended for not more than 15 days if, before the end of such 30-day period, the servicer notifies the borrower of the extension and the reasons for the delay in responding.

26 U.S.C. § 2605(e).

The Court therefore concludes that Plaintiffs' Eighth through Twentieth causes of action fail to allege viable claims under RESPA.

**B.     FDCPA**

Throughout their Complaint, Plaintiffs allege that BofA violated the FDCPA. Plaintiffs also charge Blank Rome with violating the FDCPA in their thirty-first and thirty-second causes of action. BofA and Blank Rome seek dismissal of these claims, contending in part that they are not "debt collectors."

The FDCPA proscribes certain conduct by "debt collectors." The statute defines a "debt collector" as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be *owed or due another*. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . ..

15 U.S.C. § 1692a(6) (emphasis added). However the statute sets forth exclusions, including "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person . . .." *Id.* § 1692(6)(F).

Interpreting these provisions, the Sixth Circuit has held that "creditors are not subject to the FDCPA when collecting their accounts." *Montgomery v. Huntington*

14

*Bank*, 346 F.3d 693, 699 (6th Cir. 2003); *see also Partlow v. Aurora Loan Servs., L.L.C.*, No. 11-12940, 2012 WL 12766, at *5 (E.D. Mich. Jan. 4, 2012) ("It is well settled that the provisions of the FDCPA apply only to professional debt collectors, not creditors or mortgagors.") (citations omitted). BofA as mortgagee and servicer of the indebtedness therefore is exempt from liability under the FDCPA.

BofA became the mortgagee and mortgage servicer before Ms. Gholston defaulted on the loan. Thus Blank Rome, acting on BofA's behalf in communicating with Ms. Gholston, also is not a "debt collector" under the FDCPA. Furthermore, Blank Rome's communications with Plaintiffs could not be construed as being for the purpose of "collecting or attempting to collect any debt" or soliciting payment. Instead, as the law firm's letters clearly state, its interactions with Plaintiffs were for the limited purpose of responding to Ms. Gholston's correspondences. Thus Plaintiffs' FDCPA claims against it also fail as a matter of law.[4]

### C.      Intentional Infliction of Emotional Distress

In paragraph thirty-five of their Complaint, Plaintiffs charge Defendants with causing them emotional distress. (*See* ECF No. 1 at Pg ID 12.) To the extent Plaintiffs are asserting a claim for intentional infliction of emotional distress, this

---

[4]Plaintiffs' allegations against BofA and Blank Rome also are insufficiently pled to state a claim, as Plaintiffs make only vague and conclusory allegations which do not provide either defendant with notice of how the statute is alleged to have been violated.

15

claim also fails.

Under Michigan law, a plaintiff claiming intentional infliction of emotional distress must show: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Jones v. Muskegon Cnty.*, 625 F.3d 935, 948 (6th Cir. 2010) (applying Michigan law) (citation omitted). "Such conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.' " *Id.* (quotation omitted). Plaintiffs fail to allege conduct by BofA or Blank Rome that would satisfy such a standard.

### D.    Fraud

Plaintiffs also appear to allege that BofA and Blank Rome engaged in fraud. (*See, e.g.,* ECF No. 1 at Pg ID 12.) A plaintiff alleging fraud is subject to the heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This rule requires a plaintiff: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead where and when the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (citation omitted); *see also Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) ("As a sister circuit has

16

phrased it," Rule 9(b) requires a plaintiff to "specify the 'who, what, when, where,

and how' of the alleged fraud.") (quoting *United States ex rel. Thompson v.

Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

The only "fraud" pled in Plaintiffs' Complaint relates to statements by BofA

and Blank Rome concerning the mortgage loan which Plaintiffs challenge as being

"not verified" and "false" and "serviced without merit or legal basis to do so."  (*See,*

*e.g.*, ECF No. 1 at Pg ID 11.)  Plaintiffs, however, set forth no allegations in their

Complaint or elsewhere to explain why any statements concerning the mortgage loan

are false.  The undisputed evidence indicates that Plaintiffs lack any legitimate ground

for challenging the validity of the debt.[5]

Accordingly, their fraud claim also is subject to dismissal.

## IV.   Conclusion

For the reasons stated, the Court agrees with BofA and Blank Rome that

Plaintiffs fail to state a claim upon which relief may be granted in their Complaint.

Nothing in any of Plaintiffs' pleadings suggest that they could state a viable claim

against BofA or Blank Rome if granted the opportunity to amend their Complaint.

Thus, the Court concludes that Plaintiffs' Complaint must be dismissed with

prejudice.  The Court therefore is denying Plaintiffs' motions for summary judgment

---

[5]For this reason, the Court also finds Plaintiffs' assertion that they hold title
to the Property free and clear to be meritless.

17

and finds moot the motion to stay discovery filed by BofA and Blank Rome, jointly.

Accordingly,

**IT IS ORDERED**, that Defendant Bank of America, N.A.'s motion to dismiss (ECF No. 21) is **GRANTED**;

**IT IS FURTHER ORDERED**, that Defendant Blank Rome LLP's motion to dismiss (ECF No. 22) is **GRANTED**;

**IT IS FURTHER ORDERED**, that Plaintiffs' motions to strike or, in the alternative, for summary judgment (ECF No. 27, 28) are **DENIED**;

**IT IS FURTHER ORDERED**, that Defendants' Joint Motion to Stay Discovery (ECF No. 17) is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED**, that Plaintiffs' Motion to Strike (ECF No. 18) and Motion for Sanctions (ECF No. 39) are **DENIED**.

S/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: November 26, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, November 26, 2014, by electronic and/or U.S. First Class mail.

S/ Richard Loury
Case Manager